

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 07, 2015.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 13-50724-CAG |
| | § | |
| AZIZ ALI and MUMTAZ ALI, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

**ORDER DENYING PLAINTIFFS' MOTION TO AMEND JUDGMENT OR IN THE ALTERNATIVE FOR NEW TRIAL (ECF NO. 174) and DENYING DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT OR FOR NEW TRIAL(ECF NO. 175)**

Before the Court is "Plaintiffs' Motion to Amend Judgment or in the Alternative Motion for New Trial Pursuant to Bankruptcy Rule 9023 (FRCP 59(a) and 59(e)) in relation to Adversary Case 13-05083 for orders Dated July 23, 2015, Filed as Docket Nos. 69 and 70, and Judge's Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law, Docket No. 71; and in relation to Bankruptcy Case 13-50724: Relating to Orders Dated July 23, 2015, Filed as Docket Nos. 150, and 153 and Judge's Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law, Docket No. 161" filed on the dockets for Bankruptcy Case No. 13-50724 (BK ECF No. 174) and Adversary Proceeding No. 13-05083 (Adv. ECF No. 78), and

1

Defendants' Responses thereto (BK ECF No. 182; Adv. ECF No. 83). Also before the Court is Defendants' "Motion for Relief from Judgment Pursuant to B.R. 9024 or for New Trial Pursuant to B.R. 9023 as to Orders on Proof of Claims 7-2, 9-3 & 17-1" filed on the docket for Bankruptcy Case No. 13-50724 only (BK ECF No. 175), and Plaintiffs' Response thereto (BK ECF No. 181).

## PROCEDURAL HISTORY

The various claims in this Adversary Proceeding and allegations raised in the Objections to Claim arise from a long history of personal and business connections between Plaintiffs and Defendants. Plaintiffs filed the underlying Chapter 13 bankruptcy case on March 20, 2013 (the "Petition Date"). Defendants filed eleven proofs of claim on May 15, 2013 (Claims Register Nos. 7–17), to which Plaintiffs filed, and subsequently amended, objections to each of Defendants' claims, disputing their amount and validity. On September 16, 2013, Defendants responded to each of Plaintiffs' Objections. Plaintiffs commenced the Adversary Proceeding by the filing of their Complaint on October 16, 2013. Defendants filed their Answer on November 15, 2013. Thereafter, Plaintiffs twice amended their Complaint on January 31, 2014 and March 4, 2014.

Prior to filing their Answer to the Second Amended Complaint, however, Defendants filed a Motion for Partial Summary Judgment and for Judgment on Plaintiffs' Pleadings/Failure to state a Claim (hereinafter "Summary Judgment Motion") on March 12, 2014, to which Plaintiffs responded on March 28, 2014. Defendants also filed a Reply in support of the Summary Judgment Motion on April 11, 2014, and Plaintiffs filed a Surreply on April 30, 2014. The parties agreed to submit the Summary Judgment Motion to the Court for a ruling on the pleadings without the need for a hearing. On June 10, 2014, the Court delivered its oral ruling on the record and entered the Order granting, in part and denying, in part the Summary Judgment

2

Motion. Pursuant to the Court's oral ruling and Order, the Court dismissed Plaintiffs' claims for intentional infliction of emotional distress for lack of statutory authority. The Court also dismissed Plaintiffs' claim for breach of contract due to Plaintiffs' lack of standing. Additionally, the Court dismissed, without prejudice, Plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act, violations of the Texas Debt Collections Act, conversion, and malpractice so that the parties could proceed on those claims in state courts where identical claims were already asserted.

The Court ordered the parties to proceed to trial on the following remaining claims: (1) breach of fiduciary duty, (2) fraud in the inducement, (3) abuse of process, (4) usury, (5) breach of partnership, (6) accounting of partnership, (7) suit to quiet title, and (8) violations of the automatic stay. Additionally, the Court ordered the parties to proceed to trial on Plaintiffs' Objections to Claim for Proofs of Claim numbers 7 through 17.

This Court conducted a six day trial from June 16, 2014, through June 20, 2014 and on June 23, 2014, before taking the matters under advisement. Trial was concluded on June 23, 2014, and the Court allowed the parties to submit post-trial proposed Findings of Fact and Conclusions of Law as well as Deposition and Transcript Excerpts.

On July 23, 2015, the Court entered its Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law (hereinafter "Memorandum Opinion") in both the adversary proceeding and the bankruptcy case. The Court also entered corresponding orders on each Objection to Claim, a Final Judgment in the adversary proceeding, and an Order Providing Notice of Filing of Proposed Findings of Fact and Conclusions of Law.

On August 6, 2015, Plaintiffs filed their Motion to Amend Judgment or In the Alternative, Motion for New Trial Pursuant to Bankruptcy Rule 9023 in relation to the Memorandum Opinion; Order Providing Notice of Proposed Findings of Fact and Conclusions of

Law; and Final Judgment entered in the Adversary Proceeding at Adversary ECF Nos. 69, 70 and 71 and in Relation to Orders on Objections to Claims and the Memorandum Opinion in the Bankruptcy Case at Bankruptcy ECF Nos. 150, 153 and 161. The Motion to Amend is filed in both the Bankruptcy Case (BK ECF No. 174) and in the Adversary Proceeding (Adv. ECF No. 78), but is the exact same document on each docket. Defendants' filed their Response in both the Bankruptcy Case (BK ECF No. 182) and in the Adversary Proceeding (Adv. ECF No. 83), and is also the exact same document on each docket.

Also on August 6, 2015, Defendants filed their Motion for Relief from Judgment Pursuant to Bankruptcy Rule 9024 or for New Trial Pursuant to Bankruptcy Rule 9024 as to Orders on Proofs of Claims 7-2, 9-3 and 17-1, in the bankruptcy case only (BK ECF No. 175). Plaintiffs filed their Response at BK ECF No. 181.

The Court held a hearing on the parties' motions on September 22, 2015 and took the matters under advisement. Upon consideration of the parties' motions, the pleadings in the case, the Court's Memorandum Opinion and the oral arguments of the parties, the Court declines to alter or amend its Memorandum Opinion or its corresponding judgment and orders. The Court also declines to order a new trial upon any issues involved in this case.

**STANDARD ON A MOTION TO ALTER OR AMEND**

Plaintiffs bring their Motion to Amend Judgment or for New Trial under Federal Rule of Bankruptcy Procedure 9023 and Federal Rules of Civil Procedure 59(a) & (e). Defendants bring their Motion for Relief from Judgment under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60. Defendants, alternatively, move for new trial under Federal Rule of Bankruptcy Procedure 9023.

Bankruptcy Rule 9023 provides that a party may file a motion "to alter or amend a judgment" and that Rule 59 of the Federal Rules of Civil Procedure applies in cases under the

4

Code. "A Rule 59(e) motion [made applicable through Bankruptcy Rule 9023] is a motion that calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). "Rule 59(e) is properly invoked 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

To prevail on a motion to alter or amend, the movant has the burden of establishing one of the following: 1) "the motion is necessary to correct manifest errors of law or fact upon which the judgment is based," 2) there is "newly discovered or previously unavailable evidence," 3) an alteration of the judgment is "necessary to prevent manifest injustice," or, 4) there has been "an intervening change in controlling law." *In re Save Our Springs (S.O.S.) Alliance, Inc.*, No. 07-10642-CAG, slip op. at 4 (Bankr. W.D. Tex. June 13, 2008) (quoting 11 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2810.1 (2008)); *see also In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 691 (Bankr. W.D. Tex. 2011) (quoting *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

A Rule 59 motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citations and internal quotations omitted). As this court stated in *In re Save Our Springs (S.O.S.) Alliance, Inc.*, in cases where a Rule 59 motion is brought after a "full, evidentiary bench trial, if one assumes that the court's original decision correctly reflects its considered judgment on the applicable law and facts, a Rule 59 motion in essence merely asks the court to change its mind." Order Denying Debtor's Motion for New Trial or to Amend Order Denying Confirmation or, in the Alternative, to Present Additional Evidence on Confirmation, *In re Save Our Springs,* at 6 n.1.

5

In the Fifth Circuit, "relief under Federal Rule 59(e) is an 'extraordinary remedy that should be used sparingly.'" *In re Hence*, 358 B.R. 294, 308 (Bankr. S.D. Tex. 2006) (quoting *Templet*, 367 F.3d at 479)). A trial court has "considerable discretion" in deciding a motion to alter or amend and "the trial court must strike the proper balance between . . . (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

Aside from clerical corrections, Rule 60(b) provides the following grounds for relief from a final judgment, order or proceeding:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under rule 59(b);
> (3) fraud …, misrepresentation, or misconduct by the opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b)(6)'s catchall provision is "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) (citations omitted). A grant of relief under the catchall provision, however, requires "extraordinary circumstances." *Id.*

## ANALYSIS OF PARTIES' ARGUMENTS

### I. Proof of Claim No. 7-2

In regard to Proof of Claim No. 7-2, both parties object to the Court's ruling in its Memorandum Opinion. In its Memorandum Opinion, the Court concluded that Defendants' claim for weekly loans should be allowed in the amount of $67,220.00 as an unsecured claim and found that Defendants were not entitled to any interest on the claim.

A.     Defendants' Objections

Defendants assert that the Court erred by not awarding interest on the weekly loan amounts. Defendants point the Court to Texas Finance Code § 302.002 to evidence its entitlement to interest of 6% because there was no agreement to a specific rate of interest associated with the weekly loans. Plaintiffs respond that, in order for Tex. Fin. Code § 302.002 to apply, there must be an underlying loan agreement. That is, there must first be a contract in existence in order for the 6% interest rate to be read into the contract. Defendants admit that there was no written agreement for repayment of the loans.

Tex. Fin. Code § 302.002 provides:

> If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due ….

It is true that Tex. Fin. Code § 302.002 may be applicable to Defendants' claim; however, Defendants never asserted or plead their entitlement to interest under this statute. This Court has reviewed the record and pleadings filed in both the adversary and bankruptcy case and finds no mention whatsoever of Defendants' belief that it is entitled to interest on Proof of Claim No. 7 under Tex. Fin. Code § 302.002. As such, the Court shall not now consider a new theory of recovery. As stated in the Court's Memorandum Opinion, the burden of proof in regards to a proof of claim shifts during the course of the claims litigation. Although a properly filed proof of claim constitutes prima facie evidence of the validity and amount of claim, where an objecting party produces evidence at least equal to the probative force of at least one allegation of the proof of claim, the burden of proof finally rests on the claimant to prove up his claim outside of bankruptcy. *See* Paragraphs 270-275 of Memorandum Opinion. In Paragraph 286 of its Memorandum Opinion, the Court found that Plaintiffs offered sufficient proof to rebut the

7

original presumption of *prima facie* validity afforded Defendants proof of claim. Thus, the burden of proof shifted back to Defendants. Here, Defendants did not assert their entitlement to interest under § 302.002 of the Texas Finance Code and therefore, did not prove that the 6% interest they assert in their proof of claim was allowed under that statute. Rather, Defendants merely assumed entitlement to interest without offering proof of such entitlement. Plaintiffs properly objected to Defendants' entire claim but also to the charge of interest they asserted Defendants were not entitled to.

The Court finds that question of whether Tex. Fin. Code § 302.002 is applicable to Defendants' claim should have been raised far before a Motion to Relief from Judgment or Motion for New Trial. Defendants had a burden to prove entitlement to interest and they failed to meet that burden. As such, the Court shall not now re-litigate arguments that could have, and should have, been made prior to close of trial.

For these reasons, the Court denies Defendants' request for relief from judgment and denies the Defendants' request for new trial in regards to Proof of Claim No. 7-2.

B. <u>Plaintiffs' Objections</u>

Plaintiffs assert that the Court erred in not giving the Debtors credit for all receipts presented at trial in Exhibits 266 and 267. The Court made the following finding at Paragraph 291 of the Memorandum Opinion:

> The Court finds that the copies of deposit slips provided in Plaintiffs' Exhibits 266 and 267 are insufficient proof of cash repayment to Defendants because there is no identifying information contained on the deposit slip to show the source of the funds being deposited or who the person making the deposit actually was. As such, the Court will not rely on the evidence of deposit slips alone to prove Plaintiffs repayment of the weekly loans.

Plaintiffs argue that Debtors' and their expert's testimony at trial that Debtors possessed the original receipts is sufficient to establish existence of the original receipts. Plaintiffs also

8

assert that Defense counsel had an opportunity to review the original receipts and that Defendants did not dispute their authenticity. Plaintiffs assert that the Alis' possession of the original receipts is proof that the money deposited into Merchant's account all originated from the Alis. Plaintiffs argue that Merchant's own testimony confirms that Aziz Ali would repay him by depositing cash or a check directly into Merchants' business account. Plaintiffs also assert that Merchant's testimony that he would give Aziz Ali his own cash for deposit into Merchant's account lacks credibility—arguing that this testimony contradicts Merchant's above admission. Defendants respond by admitting the Plaintiffs had receipts but there was still a bona fide dispute as to the source of the funds.

    Here, the Court declines to alter its factual finding that Plaintiffs did not provide sufficient proof that the source of funds evidenced in the deposit slips and receipts was the Alis. Plaintiffs point to the Court's findings regarding Merchant's testimony that he was not credible and several times contradicted himself as reason why this Court should find absolutely nothing he says plausible. Although the Court did find Merchant's testimony lacked credibility, the Court also finds that the relationship between the parties at this time lent itself to the believability that Merchant would give cash to Aziz so that Aziz could deposit to Merchant's account for him. Aziz's testimony was not sufficient to rebut that this arrangement was likely to happen given the relationship of the parties at this point in time—viewing the testimony of both Merchant and Aziz. As such, the Court finds that the proof of repayment offered by Plaintiffs in the form of deposit slips and receipts—whether in original form or as copies—remain insufficient to show the source of those funds. Unfortunately, this is a reality of dealing in cash deposits and a choice Plaintiffs made in their relationship with Merchant. The Court declines to alter its finding that Plaintiffs did not meet their burden of proof to show repayment under Proof of Claim No. 7-2.

For these reasons, the Court denies Plaintiffs' request to alter or amend judgment and denies Plaintiffs' request for new trial in regards to Proof of Claim No. 7-2.

## V. Proof of Claim No. 9-3

In regard to Proof of Claim No. 9-3, Defendants object to the Court's ruling in its Memorandum Opinion that Defendants' claim for repayment and interest upon a down payment for the Lucky Real Property should be disallowed in its entirety.

Defendants argue first that the Court erred in finding "that there was no testimony of any agreement for the Debtor to repay Merchant any of amount of [sic] the down payment for the Lucky Real Property" and asserts that Merchant testified that the parties agreed to split the down payment. Second, Defendants argue that—even without this testimony—it is inconsistent for the Court to decline to interfere with pending state court litigation regarding the ownership of the Lucky Real Property and any amounts owed from one joint owner to another while disallowing Defendants' claim for a portion of the down payment and interest accrued thereon. Plaintiffs respond that the Court's factual findings regarding any testimony of an alleged agreement to repay for a down payment are correct. Plaintiffs further argue that the Court may address the Proof of Claim and Defendants' entitlement to repayment for a portion of the down payment without disturbing state court issues of ownership and the breach of partnership cause of action.

The Court first declines to alter its factual finding that Merchant "offered no proof or testimony that any agreement—oral or written—exists obligating Plaintiffs to repay Merchant any amount of the down payment for the Lucky Real Property." *See* Paragraph 328 of Memorandum Opinion. In fact, such an assertion now conflicts with the varied testimony Merchant did offer at trial regarding the purchase of the Lucky Real Property. For example, Merchant testified at one point that he alone owned the property while at another time testified that the purchase of the Lucky Real Property was a joint venture. Interestingly, Merchant also

10

testified he repaid a loan from Aziz that was meant to help him make the down payment in 2007. *See* Paragraphs 41-56 of Memorandum Opinion. Even assuming Merchant did testify that he had an oral agreement with Aziz for partial repayment of the down payment for the Lucky Food Mart, such testimony would simply be another version of many stories offered by Merchant regarding the Lucky Food Mart real property purchase.

The Court also declines to alter its ruling to abstain from deciding whether Merchant is entitled to repayment for a down payment on the Lucky Food Mart Real Property. The Court abstained from considering Plaintiffs' claims for breach of partnership, accounting of partnership and suit to quiet title because the Court found that ownership of the Lucky Real Property and Food Mart and any amounts owed from one joint owner to another are the subject of pending state court litigation in which a Rule 11 agreement has been entered and still controls that relationship of the parties. The Court, however, may separately decide whether Merchant met his burden of proof to show entitlement to repayment for the down payment. The Court finds that this question is distinct from deciding the ownership of the property or whether a partnership existed. The Court found that Merchant did not meet his burden of proof to show a right to repayment and therefore, declines to alter its holding that Defendants' Proof of Claim No. 9-3 should be disallowed in full.

For these reasons, the Court denies Defendants' request for relief from judgment and denies Defendants' request for new trial in regards to Proof of Claim No. 9-3.

### XIII. Proof of Claim No. 17-1

In regard to Proof of Claim No. 17-1, Defendants object to the Court's ruling in its Memorandum Opinion that Defendants' claim for damage to the Fort Sam Grocery should be disallowed in its entirety.

Defendants argue that the Court erred in denying its claim for damage to the Fort Sam Grocery Property by asserting that Debtors admitted to personally removing items from Ft. Sam Grocery and taking them to Greenway Grocery and Lucky Food Mart. Defendants argue that they have a statutory, if not contractual, lien on all property in the premises, citing Tex. Prop. Code § 54.041. Defendants also assert that a claim exists against the Alis individually because they took possession of Merchant's collateral and personally benefitted. Finally, Defendants' argue that they have a quantum meruit claim. Plaintiffs respond that the Court correctly held that Plaintiffs did not have personal liability under the Fort Sam Grocery lease. Plaintiffs also assert that Defendants' claims for conversion and quantum meruit may not be raised for the first time now, in a Motion for Relief from Judgment or for New Trial. Further, Plaintiffs argue that—even if the Court heard Defendants' claims for conversion and quantum meruit—those claims are without merit.

It is possible that Defendants may have had claims for conversion or quantum meruit or a statutory lien under Tex. Prop. Code § 54.041 with regard to the Fort Sam Grocery; however, Defendants never asserted or plead these claims as the basis for Proof of Claim No. 17. This Court has reviewed the record and pleadings filed in both the adversary and bankruptcy case and finds no mention whatsoever of Tex. Prop. Code § 54.041 or claims for conversion or quantum meruit relating to the Fort Sam Grocery. On the contrary, Defendants stated that the basis for Proof of Claim No. 17 was first "Repair Work Done – Lease Broken – Fort Sam Groc [sic]" in the original filed proof of claim, and then "Damaged Property – Fort Sam Grocery" in the amended proof of claim. Both of these filings, in addition to the receipts or accountings attached to them, reflect a request for repayment based on repair work done to the Fort Sam Grocery—not to removal of items as now stated by Defendants in their Motion for Relief from Judgment or for New Trial.

12

The Court shall not now consider a new theory of recovery. Here, Defendants did not assert a claim under the Tex. Prop. Code § 54.041 or under conversion or quantum meruit. As such, the Court shall not now re-litigate arguments that could have, and should have, been asserted much sooner in litigation.

For these reasons, the Court denies Defendants' request for relief from judgment and denies the Defendants' request for new trial in regards to Proof of Claim No. 17-2.

## IV. Usury

In regard to Plaintiffs' Adversary claim for usury, Plaintiffs object to the Court's ruling in its Memorandum Opinion that Plaintiffs failed to prove the basis for the amount of damages that should be awarded for usurious charges by Defendants. Defendants respond that the Court correctly concluded that Plaintiffs failed to prove the basis for an award of damages but also argues that the filing of a proof of claim cannot constitute a "charge" under the Texas usury statutes. Defendants also assert that, even if there was a "charge," Merchant can raise an accidental and bona fide error defense because Merchant was not aware of the limit he could charge.

First, the Court declines to alter its Memorandum Opinion based on any of Defendants' alternative assertions. In response to Plaintiffs' Motion to Amend, Defendants argue that the filing of a proof of claim cannot constitute a "charge" under the Texas usury statutes. This response to Plaintiffs' Motion to Amend, however, is the first time Defendants have raised this argument in relation to Plaintiffs' adversary claim of usury. Rather, in both Defendants' Motion for Partial Summary Judgment (Adv. ECF No. 27) and Defendants' Proposed Findings of Fact and Conclusions of Law (Adv. ECF No. 64), Defendants chose only to challenge Plaintiffs' assertions that filing their Objections to Claim constituted "written notice" under the applicable statutes. Only now, at the post-trial and opinion stage, do Defendants challenge whether the

13

filing of a proof of claim may constitute a "charge." Likewise, Defendants did not raise any defense of accidental or bona fide error in regard to usury until filing its response to Plaintiffs' Motion to Amend post-trial and post-opinion. As such, the Court shall not now re-litigate arguments that could have, and should have, been asserted by Defendants much sooner in litigation.

Second, the Court declines to alter its Memorandum Opinion based on Plaintiffs assertions that statutory damages for usury were pled and proved. Plaintiffs argue that they pled for statutory damages which are three times the amount of usurious interest charged or received under Tex. Fin. Code § 305.001(a-1). Plaintiffs further assert that the amount of statutory damages were proven through Defendants' own proofs of claim 7, 11, 12, 14 and 15, wherein Merchant originally claimed 24% interest and then dropped it down to either 5 or 6% later—which Plaintiffs now argue is the legal rate under Texas law so that the amount of damages would be the difference between these two numbers, trebled.

For the first time in this litigation, however, Plaintiffs urge the Court to look to Texas Finance Code §§ 302.002 and 304.003 for the maximum interest rate Defendants' could have legally charged on the affected claims without being usurious. This Court has reviewed the record and pleadings filed in both the adversary and bankruptcy case and finds no mention whatsoever of Plaintiffs' belief that §§ 302.002 and 304.003 provide the baseline for calculating damages in its usury claims. Plaintiffs merely made conclusory statements that 5% or 6% is the legal rate under Texas law. Further, the Plaintiffs' Motion to Amend also pointed the Court to look to Tex. Fin. Code §§ 302.001, 305.001, 305.006, 306.002, and 349.001. Not a single one of these statutes were recited in Plaintiffs' Adversary Complaints or Objections to Claim—even as amended. At most, Plaintiff referred to these statutes in its post-trial Proposed Findings of Fact and Conclusions of Law or in the Joint Pre-Trial Order. None of these statutes that the Plaintiffs

did cite, however, provided the Court with any guidance as to what the maximum interest rate under Texas law applicable to Defendants' claims was.

Plaintiffs' argument seems to be that they cited to the Texas Finance Code so this Court should have divined the section (of a number of possibilities) upon which Plaintiffs wished to base their calculation of usury damages. To date, the Court is unaware whether the statutes cited are applicable to the facts of this case because the statutes were not properly pled. Indeed, Defendants' counsel would be prejudiced were the Court to consider the statutes now, given that he was never put on notice that Plaintiffs would argue their applicability. Rather, to the contrary, Plaintiffs' counsel continues to maintain—at least with respect to Proof of Claim No. 7-2—that Defendants were not entitled to any interest at all, even under Tex. Fin. Code § 302.002. Plaintiffs' argument with regard to interest allowed under the proof of claim and interest permitted to be charged without violating usury statutes are incompatible.

The Court finds that Plaintiffs' calculation for usury damages using Tex. Fin. Code §§ 302.002 and 304.003 should have been pled far before their Motion to Amend or Motion for New Trial. Plaintiffs have the burden to prove the amount of damages to which they are entitled under applicable statutes and they failed to meet that burden. As such, the Court shall not now re-litigate arguments that could have, and should have, been made prior to close of trial.

For these reasons, the Court declines to alter or amend its ruling in the Memorandum Opinion and denies Plaintiffs' request for new trial in regards to usury.

**VI. Proof of Claim No. 10-3 and Adversary Cause of Action for Fraud in the Inducement**

In regards to the Court's rulings on Proof of Claim No. 10-3 and Plaintiffs' adversary claim for Fraud in the Inducement, Plaintiffs' arguments are interrelated. First, Plaintiffs urge this Court to reconsider its ruling that Proof of Claim No. 10-3 should be allowed in the amount

15

of $218,739.45 as a secured claim because the Court did not consider Fraud in the Inducement *as a defense* to the claim. To the extent the Court finds the claim is valid, Plaintiffs also argue that the claim is only secured up to $75,000.00. Second, Plaintiffs urge this Court to reconsider its ruling that Plaintiffs' adversary claim for Fraud in the Inducement is barred by the applicable statute of limitations because the adversary action should be deemed a compulsory counterclaim to Defendants' proof of claim and therefore, is not barred as a compulsory counterclaim under Texas law.

Upon review of the pleadings and the dockets in both the bankruptcy and adversary cases, the Court finds that Plaintiffs did argue at the summary judgment stage that their claim for Fraud in the Inducement is not barred by statute of limitations because it is a compulsory counterclaim and may be asserted pursuant to Texas Civil Practice & Remedies Code § 16.069(a). As such, the Court shall reconsider its ruling on Proof of Claim No. 10-3 and Plaintiffs' adversary claim for Fraud in the Inducement on that basis. The Court finds, however, that even assuming Tex. Civ. Prac. & Rem. Codes § 16.069(a) does preserve Plaintiffs' Fraud in the Inducement defense and adversary claim as a compulsory counterclaim, the Plaintiffs' claims fail on the merits.

Fraudulent inducement is a "particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." **Haase v. Glazner**, 62 S.W.3d 795, 798–99 (Tex. 2001). "[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id.* at 799. "Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim." *Id.* at 798. One seeking to rescind an agreement based on fraudulent representations must show that he relied upon such representations and that they induced him to execute the agreement. *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 68 (Tex. App.—Corpus Christi 1993, writ

16

denied). However, although fraud vitiates a contract, the fraud must be something more than merely oral representations that conflict with the terms of the written contract. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997) (citing *Distribs. Inv. Co. v. Patton*, 110 S.W.2d 47, 48 (Tex. 1937)). To vitiate a contract, the fraud must be such that it "prevents the coming into existence of any valid contract at all." *Id.* (quoting *Patton*, 110 S.W.2d at 48).

The elements of fraud in the inducement are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). The element of reliance has also been given as "actually and justifiably relied upon the representation." *Ernst & Young L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

In its Memorandum Opinion, the Court made the following findings when considering whether the doctrine of fraudulent concealment could toll the applicable statute of limitations:

> 527. The Court finds that Plaintiffs were present at the closing.
>
> 528. The Court also finds that the closing documents reflected Merchant's asserted sale price of $295,000 plainly.
>
> 529. The Court also finds that Plaintiffs admitted to receiving a copy of the closing documents either at the closing or shortly thereafter.
>
> 530. The Court finds that Plaintiffs chose not to read the closing documents either at the actual closing at the title company or after they received their copy of the closing documents.
>
> 531. Although Plaintiffs argue that they trusted Merchant enough not to read the closing documents, even if the Court assumes that Merchant did not tell them the truth about the sales price, the Court finds that Plaintiffs' reliance on Merchant and failure to read the closing documents at the closing or after receiving their copy from the closing company was not reasonable.

17

532. As such, even if this Court assumes that the first two elements for fraudulent concealment are met, the Court does not find that Merchant attempted to conceal the alleged tort. Likewise, the Court does not find that Plaintiffs' reliance on Merchant's alleged representations when they possessed the closing documents disclosing the $295,000 sale price was reasonable.

Here, the Court has already found that, even assuming Merchant did not tell the Plaintiffs the truth about the sales price for the Greenway Grocery, Plaintiffs' reliance on Merchant and failure to read the closing documents at the closing or after receiving their copy from the closing company was not reasonable. The Court finds that the closing documents clearly stated the $295,000 sales price, Plaintiffs admitted to signing the closing documents themselves, and simply chose not to read what they were signing. In the plainest terms, the Court simply finds that Plaintiffs' decision to rely on Merchant—particularly because Merchant was the seller in this transaction—and simply sign or initial where he indicated, without any review of their own, was not reasonable. As such, the Court finds that Plaintiffs do not satisfy the reliance element required for their success on the merits of the Fraud in the Inducement claims, defensively or as an adversary claim.

Plaintiffs, alternatively, argue that the claim is partially unsecured; urging that only $75,000 of the Second Mortgage Note is secured by the Greenway Property. This Court has reviewed the record and pleadings filed in both the adversary and bankruptcy case and finds that Plaintiffs did not challenge the secured or unsecured status of Proof of Claim No. 10-3 in the original Objection to Claim or any of the three amendments that followed. In fact, in footnote 19 of the Memorandum Opinion, the Court noted the following:

> Pursuant to the Court's finding that Defendants' claim to enforce the lien on real property is not barred by the applicable four-year statute of limitations, the Court finds that Plaintiffs did not object to Claim No. 10's designation as a secured claim. This Court was not asked to determine the value of the property so as to determine the extent of the secured claim and shall not do so in this Memorandum Opinion.

The Court finds that Plaintiffs' new challenge to the secured status of Claim No. 10 in the Motion to Amend or Motion for New Trial is a request for new relief that was not pled in their Objection to Claim. As such, the Court declines to alter its findings as stated in footnote 19 of the Memorandum Opinion as to the security status of Claim No. 10-3.

For the aforementioned reasons, the Court grants reconsideration of its ruling on Proof of Claim No. 10-3 and Plaintiffs' adversary claim for Fraud in the Inducement in the Memorandum Opinion. The Court, however, declines to alter its ultimate holdings because the Court finds, upon reconsideration, that Plaintiffs' claims for Fraud in the Inducement nonetheless fail on the merits.

## CONCLUSION

For the aforementioned reasons, it is therefore,

ORDERED, ADJUDGED and DECREED that "Plaintiffs' Motion to Amend Judgment or in the Alternative Motion for New Trial Pursuant to Bankruptcy Rule 9023 (FRCP 59(a) and 59(e)) in relation to Adversary Case 13-05083 for orders Dated July 23, 2015, Filed as Docket Nos. 69 and 70, and Judge's Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law, Docket No. 71; and in relation to Bankruptcy Case 13-50724: Relating to Orders Dated July 23, 2015, Filed as Docket Nos. 150, and 153 and Judge's Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law, Docket No. 161" filed in Bankruptcy Case No. 13-50724 (BK ECF No. 174) is DENIED. It is further,

ORDERED, ADJUDGED and DECREED that "Plaintiffs' Motion to Amend Judgment or in the Alternative Motion for New Trial Pursuant to Bankruptcy Rule 9023 (FRCP 59(a) and 59(e)) in relation to Adversary Case 13-05083 for orders Dated July 23, 2015, Filed as Docket Nos. 69 and 70, and Judge's Memorandum Opinion and Proposed Findings of Fact and

Conclusions of Law, Docket No. 71; and in relation to Bankruptcy Case 13-50724: Relating to Orders Dated July 23, 2015, Filed as Docket Nos. 150, and 153 and Judge's Memorandum Opinion and Proposed Findings of Fact and Conclusions of Law, Docket No. 161" filed in Adversary Proceeding No. 13-05083 (Adv. ECF No. 78) is DENIED. It is further,

ORDERED, ADJUDGED and DECREED that Defendants' "Motion for Relief from Judgment Pursuant to B.R. 9024 or for New Trial Pursuant to B.R. 9023 as to Orders on Proof of Claims 7-2, 9-3 & 17-1" filed in Bankruptcy Case No. 13-50724 (BK ECF No. 175) is DENIED.

# # #